IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PERLA V. TORRES,

        Plaintiff,                          Case No. 6:20-cv-01680-MC

        v.                              OPINION AND ORDER

NATIONAL FROZEN FOODS
CORPORATION, et al.,

        Defendants.

_____

**MCSHANE, Judge**:

      Plaintiff Perla Torres alleges she was subject to discrimination, retaliation, a hostile work environment, and the intentional infliction of emotional distress (IIED) during her employment with Defendant National Frozen Foods Corporation ("National") Pl.'s Compl. ¶ 1, ECF No. 1. Plaintiff alleges the discrimination occurred because she is a Hispanic woman and resulted in her constructive discharge. Plaintiff also brings aiding and abetting claims against Frank Tiegs (National's President and owner), Larry Hargreaves (the plant manager), and Bernadette Kintz (the plant's Human Resources Manager), and IIED claims against Tiegs and Hargreaves. Defendants move to dismiss all thirteen claims. Def.'s Mot., ECF No. 10; Def.'s Mot., ECF No. 11; Def.'s Mot., ECF No. 12; Def.'s Mot., ECF No. 13. For the reasons discussed below, the Motions to Dismiss by Tiegs, Hargreaves, and Kintz are GRANTED in full and National's motion is GRANTED in part and DENIED in part.

# BACKGROUND[1]

Plaintiff, a Hispanic female, worked as a payroll administrator for National in its Human Resources (HR) Office located in Albany, Oregon. Pl.'s Compl. at ¶¶ 1-3. National is a closely held corporation based out of Washington state that employs approximately 250 to 500 employees at its food processing and packaging plant in Albany. *Id.* at ¶¶ 4-5. Tiegs is the President and owner of National. *Id.* at ¶ 7. Hargreaves has been the plant manager at National's Albany plant since 2018. *Id.* at ¶ 10. Kintz has been National's HR Manager since December 2019 and was Plaintiff's immediate supervisor until Plaintiff's resignation on June 2, 2020. *Id.* at ¶ 11. Plaintiff alleges that at all relevant times, Tiegs, Hargreaves, and Kintz "acted in the cour[se] and scope of their agency and employment for National". *Id.* at ¶ 15.

Throughout 2019 and 2020, National instructed HR to reduce employees' timecards from hours actually worked to their scheduled hours. *Id.* at ¶ 16. Plaintiff "raised concerns to" Cyndie Yarber, the HR Supervisor, that the payroll instruction violated state and federal laws.[2] *Id.* Yarber brought these concerns to Hargreaves and "National's outside legal counsel who advised against such a practice and, in response, Hargreaves became hostile and abusive toward Ms. Yarber." *Id.*

"Frequently throughout 2019 and 2020, Hargreaves created a hostile work environment by subjecting Plaintiff Torres and other female coworkers to offense sexual jokes, harassment, and discriminatory actions, and made disparaging and offensive gender-biased insults[.]" *Id.* at ¶ 18. Plaintiff provides the following allegations regarding Hargreaves' gender-biased actions:

    a. telling Plaintiff Torres women are "whiney" and "petty" in response to a concern she raised about a female co-worker;

---

[1] At the motion to dismiss stage, this Court takes all of Plaintiff's allegations as true. *Burget v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000).

[2] Plaintiff does not state when she raised the timecard concerns to Yarber.

b.  telling Plaintiff Torres women need to get over their issues;
c.  calling a special meeting with the eight-person, predominately female, HR team, to rant about the women at National being "whiney," "petty," and "emotional";
d.  stating in a meeting that women "cannot not [sic] make sound business decisions";
e.  intimidating female employees by yelling at them, getting into female workers' faces, slapping objects around, and using other physically intimidating methods;
f.  stating that men "yell" at each other and get back to work, unlike women who "drag things on and on";
g.  making crude and sexual comments in front of Plaintiff Torres while a female coworker ate a lollipop;
h.  referring to a female coworker who was of a similar age to Plaintiff Torres as "eye candy";
i.  directing Plaintiff Torres to repeatedly tell a story to other employees about another female employee who started to do a strip dance at a bar; and
j.  commenting about Plaintiff Torres being on her knees in front of coworkers, including a male employee who laughed until he was red in the face at the comment.

*Id.*[3]

In October 2019, Plaintiff and several of her coworkers brough a formal complaint regarding Hargreaves's behavior to HR Supervisor Yarber. *Id.* at ¶ 19. As a result of Hargreaves's behavior, Plaintiff suffered "extreme and severe stress in 2019 and 2020, causing her to regularly and repeatedly take sick leave." *Id.* at ¶ 20. Further, Plaintiff feared "that if she used additional leave, Hargreaves would subject her to further abuse and harassment as she had witnessed him do to other employees who used legally protected leave."[4] *Id.*

In January 2020, shortly after Plaintiff and her coworkers filed their complaint against Hargreaves, National completed the investigation of another complaint concerning Caucasian

---

[3] Plaintiff does not specify when or where Hargreaves made these comments. It is unclear whether Hargreaves made these comments on the same day during a single HR meeting, or if Hargreaves made the comments sporadically over the course of the 18-months at issue.

[4] Plaintiff does not rely on this harassment in support of her retaliation claim and, because Hargreaves did not appear to focus this harassment on women or Hispanic employees, this allegation appears to be largely irrelevant to Plaintiff's claims. That said, the Court at this stage acknowledges that the environment Hargreaves created caused Plaintiff a great deal of stress in 2019 and 2020.

employees publicly harassing Hispanic employees with racially charged comments. *Id.* at ¶ 22. The Caucasian employees stated they should "barbecue some Mexicans" while making animal sounds toward Hispanic employees. *Id.* As a result of the investigation, the Caucasian employees involved received disciplinary action, which the Plaintiff characterizes as "preferential treatment by suffering only minor punishment, including a short suspension." *Id.* Hargreaves issued a memo condemning the harassing and discriminatory behavior and noted that the harassment of Hispanics at National "had been ongoing for a long period of time."[5] *Id.* at ¶ 23. However, Hargreaves also "verbally dismissed and downplayed the incident such that Plaintiff Torres did not feel safe bringing any further concerns of harassment or discrimination to Hargreaves' attention." *Id.*

On April 16, 2020, Plaintiff witnessed Hargreaves and Kintz present Yarber "with a cloth mask covered with pictures of women's panties and the words, 'Put on your big girl panties.'" *Id.* at ¶ 26. Plaintiff felt this was in retaliation for concerns raised by Yarber about the lack of COVID guidance at the plant. *Id.* The next day, Plaintiff and Yarber filed a whistle-blowing complaint with the Oregon Occupational Safety and Health Administration (OSHA) regarding National's COVID safety protocols. *Id.* at ¶ 27. Subsequently, on April 21, 2020, Kintz directed Plaintiff "to assist her in making a list of Spanish-speaking employees who 'did not speak good English' to ensure that only 'English speaking' workers spoke to OSHA investigators." *Id.* at ¶ 28.

On April 27, 2020, after Yarber raised a concern regarding HR employees' personal phone numbers being listed on National's phone list, Hargreaves made a comment, "for a good

---

[5] While working for National, Plaintiff was not allowed to speak Spanish with coworkers without permission from managers. *Id.* ¶ 21.

time, call Cyndie." *Id.* at ¶ 30. On April 30, 2020, Plaintiff filed a complaint with the Oregon Bureau of Land and Industries ("BOLI") and the Equal Employment Opportunity Commission ("EEOC") regarding the behavior listed above, and she resigned a month later. *Id.* at ¶¶ 30-31.

## STANDARDS

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter that "state[s] a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the factual allegations allow the court to infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The factual allegations must present more than "the mere possibility of misconduct." *Id.* at 678.

When considering a motion to dismiss, the court must accept all allegations of material fact as true and construe those facts in the light most favorable to the non-movant. *Burget v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000). However, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. If the complaint is dismissed, leave to amend should be granted unless "the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

## DISCUSSION

### I. Hostile Work Environment

Plaintiff's claims for hostile work environment and harassment under Title VII, 42 U.S.C. § 1981 and ORS 659.030 have the same legal standard of review. *Piety v. City of Sweet Home*, No. 6:11-cv-6303-AA, 2013 WL 867376, at *4 (D. Or. Mar. 8, 2013). To prevail on her hostile work environment claim, Plaintiff "must show: (1) that she was subjected to verbal or physical

conduct of a racial or sexual nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive environment." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003). To determine whether conduct was sufficiently severe or pervasive, we consider the totality of the circumstances, "including the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Clark Co. Sch. Dist. v. Breeden*, 532 U.S. 268, 270-71 (2001)). "'[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious)' are not sufficient to create an actionable claim under Title VII, but the harassment need not be so severe as to cause diagnosed psychological injury." *Reynaga v. Roseburg Forest Prod.*, 847 F.3d 678, 687 (9th Cir. 2017) (alteration in original) (quoting *Faragher v. City of Boca* Raton, 524 U.S. 775, 788 (1998)). The "hostility need not be directly targeted at the plaintiff to be relevant to his or her hostile work environment claim." *Id.* (citing *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1117 (9th Cir. 2004). "The working environment must both subjectively and objectively be perceived as abusive," and the objective analysis is done "from the perspective of a reasonable" person. *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995). National argues Plaintiff fails to plead facts that rise to the level of severity or pervasiveness necessary to support a hostile work environment claim. Def.'s Mot. 14

Plaintiff alleges that National, through the actions of Hargreaves and Kitz[6], subjected her to hostile or abusive harassment based on Plaintiff's race, sex, national origin, and ethnicity and that the harassment was so severe and pervasive that it altered her conditions of employment. Pl.'s Compl. ¶ 59-60, 77-78. To support her claim, Plaintiff identifies numerous incidents of sexual harassment by Hargreaves over the course of 18 months. *Id.* at ¶¶ 18, 26, 30. Plaintiff identifies comments Hargreaves specifically directed at her: a comment regarding Plaintiff "being on her knees in front of coworkers," instructing Plaintiff "to repeatedly tell a story to other employees about another female employee performing a "strip dance at a bar," "making crude and sexual comments in front of Plaintiff Torres while a female coworker at a lollipop," and referring to a female coworker as "eye candy." *Id.* at ¶ 18(g)-(j).

Other times, Hargreaves made demeaning comments about women in general in front of Plaintiff. *See id.* at ¶ 18(a)(telling Plaintiff "women are 'whiney' and 'petty' in response to a concern [Plaintiff] raised about a female co-worker"); ¶ 18(b) (telling Plaintiff "women need to get over their issues"); ¶ 18(c) ("rant[int] about the women at National being 'whiney,' 'petty,' and 'emotional'" during a HR meeting); ¶ 18(d) ("stating in a meeting that women 'cannot not [sic] make sound business decisions'"); ¶ 18(f) (stating women "drag things on and on" while men "yell" and then get back to work).

Plaintiff also accuses Hargreaves of "intimidating female employees by yelling at them, getting in female workers' faces, slapping objects around, and using other physically intimidating methods." *Id* at ¶ 18(e). In another incident, Plaintiff accuses Hargreaves of becoming "hostile and abusive" towards Yarber after Yarber reported the timecard issue. *Id.* at ¶

---

[6] Although Plaintiff names Tiegs, National's President and owner, as a Defendant, the complaint contains no specific factual allegation that Tiegs ever harassed Plaintiff, authorized any harassment, or had any contact at all with Plaintiff.

16. These actions alone, while unquestionably boorish, demeaning, and insulting, do not rise to the level of a hostile work environment.

Sporadic comments, even of a sexually degrading nature, do not rise to the level of a hostile work environment. For instance, Judge Brown held that a supervisor did not create a hostile work environment by calling a plaintiff high maintenance, telling her she dressed too sexy, and making comments about the woman not belonging in law enforcement. *Losada v. Clatsop Cty.*, No. 3:20-CV-00068-BR, 2020 WL 2200431, at \*5 (D. Or. May 6, 2020). Similarly, the Ninth Circuit held a supervisor's actions of mailing a postcard to the plaintiff's home, calling females "castrating bitches," and calling the plaintiff "Medea," were not enough to support a hostile work environment claim. *Kortan v. California Youth Auth.,* 217 F.3d 1104, 1108, 1111 (9th Cir. 2000). In contrast, a hostile work environment claim survived summary judgment where the plaintiff was explicitly targeted by a supervisor who, over two years, harassed her every day, making comments about the plaintiff's "ass," telling her his sexual fantasies involving her, getting behind her and making crude insinuations, and making multiple sexual comments directed at the plaintiff over the loudspeaker where they worked. *Draper v. Coeur Rochester, Inc.,* 147 F.3d 1104, 1105-1106, 1108 (9th Cir. 1998). In contrast, there are no allegations here suggesting Hargreaves's actions remotely approached the same level of severity or pervasiveness.

However, along with Hargreaves inappropriate sexual harassment, Plaintiff also alleges National created a racially discriminatory workplace. For instance, Plaintiff was not allowed to speak Spanish to coworkers without first seeking permission from management,[7] *id.* at ⁋ 21, Hargreaves acknowledged that harassment of Hispanic employees "had been ongoing for a long

---

[7] At this stage, the Court assumes that this directive was motivated solely by a desire to harass Hispanic employees.

period of time" at the Albany plant, *id.* at ¶ 23, and "Kintz directed Plaintiff Torres to assist her in making a list of Spanish-speaking employees who 'did not speak good English' to ensure that only 'English speaking' workers spoke to OSHA investigators,"[8] *id.* at ¶ 28. And while National suspended Caucasian employees for making the "barbeque some Mexicans" comments, Plaintiff alleges that Hargreaves verbally downplayed the incident and that the punishments themselves were in fact preferential. *Id.* at ¶¶ 22-23. As with Hargreaves's sexually-demeaning comments, each of the above actions individually do not rise to the level of a hostile work environment. However, in the aggregate, Plaintiff alleges sufficient facts at the pleading stage to survive a motion to dismiss.

While the Ninth Circuit held that "an English-only while working policy does not inexorably lead to an abusive environment for those whose primary language is not English," it did not foreclose the fact that an English-only policy, "when combined with other discriminatory behavior," which is alleged in this case, could amount "to an overall environment of discrimination." *Garcia v. Spun Steak Co.*, 998 F.2d 1480, 1489 (1993); *see also Maldonado v. City of Altus*, 433 F.3d 1294, 1305 (10th Cir. 2006) (finding that in the absence of a legitimate reason, a city's English-only policy could support an inference of hostility toward Hispanic employees) (overruled on other grounds as recognized in *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1174 n.2 (10th Cir. 2006)). As outlined above, Plaintiff, a Hispanic female employee, alleges that she was subjected to gender-biased and sexual harassment by Hargreaves. At the same time, Plaintiff was working in an environment where the harassment of Hispanics had admittedly "been ongoing for a long period of time," and she was told she could

---

[8] On a motion to dismiss, the court considers only those facts asserted in the Plaintiff's complaint. However, Defendant will have an opportunity to provide a non-discriminatory reason for creating this list as part of the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973).

9 – OPINION AND ORDER

not speak Spanish without permission, while being asked to make a list of employees that did not speak good English. *Id.* at 21, 23, 28.

The facts as alleged ride the line of what is and is not considered sufficient to support a hostile work environment claim. However, when accepting all allegations of material fact as true and construing those facts in the light most favorable to the plaintiff, it is reasonable to believe that not only Plaintiff, but a reasonable Hispanic female in Plaintiff's position, would feel the conduct by National and its employees was so severe and pervasive as to create a hostile work environment. As noted, on this record, this is a borderline case. One specific factual allegation nudging this claim over the edge is the fact that in 2019 "National rehired a former employee who had been convicted of Sex Abuse in the First Degree for forcibly sexually assaulting one of National's female employees. As a result, Plaintiff Torres was fearful in the workplace." Pl.'s Comp. ¶ 17. Considered in the context of a gender-biased workplace created by the plant manager, this allegation persuades the Court that, at this stage, Plaintiff reasonably felt fearful in the workplace. Defendant's motion to dismiss Plaintiff's Fourth, Fifth, and Seventh claims is DENIED.

## II. Constructive Discharge

Defendant argues that Plaintiff fails to allege facts showing a constructive discharge. Def.'s Mot. at 19, ECF No. 12. "Under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes. The inquiry is objective: Did working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?" *Poland v. Chertoff*, 494 F.3d 1174, 1184 (9th Cir. 2007) *Pennsylvania*

*State Police v. Suders*, 542 U.S. 129, 141 (2004)). This is a high bar. *Id.* As described by the

Ninth Circuit:

> [A] constructive discharge occurs when the working conditions deteriorate, as a result of discrimination, to the point that they become sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer.

*Id.* (quoting *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000).

Plaintiff does not provide sufficient factual allegations demonstrating that her workplace

conditions deteriorated to the point that "a reasonable person in [her] position would have felt

compelled to resign." *Id.* (quoting *Suders*, 542 U.S. at 141). The Court agrees with National that

the timing of Plaintiff's resignation does not support the claim of constructive discharge. Even

assuming, as discussed above, that Plaintiff sufficiently pleads hostile work environment claim,

it does not follow that Plaintiff necessarily adequately pleads a claim of constructive discharge.

"A hostile-environment constructive discharge claim entails something more: A Plaintiff who

advances such a compound claim must show working conditions so intolerable that a reasonable

person would have felt compelled to resign." *Suders*, 542 U.S. at 147 (citation omitted). This

"aggravated" claim arises when plaintiff "presents a 'worst case' harassment scenario,

harassment ratcheted up to the breaking point". *Id.* at 147-48542. U.S. at 131.

Here, Plaintiff's last claim of harassment–when Hargraves said, "for a good time, call

Cyndie" after Yarber complained about receiving calls on her personal phone after work hours–

occurred on April 27, 2020. Pl.'s Compl. ¶ 30. However, Plaintiff did not resign until June 2,

2020, over one month later. *Id.* at ¶ 31. A one-month delay between the last alleged

discriminatory action and a plaintiff's resignation does not support a constructive discharge

claim. *Huffman v. Scappoose Sch. Dist. No. 1 J*, No. 3:14-CV-00941-MO, 2015 WL 4546084, at

* 4 (D. Or. Jul. 28, 2015) (finding no constructive discharge when Plaintiff retired four months after completion of a discrimination remediation plan and one month after her alleged harasser retired); *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1465 (9th Cir. 1994) (finding no constructive discharge when employer fired alleged harasser 2.5 months before Plaintiff resigned); *Montero v. AGCO Corp.*, 192 F.3d 856, 861 (9th Cir. 1999) (no constructive discharge when harassing behavior ended three to four months before Plaintiff's resignation). After all, a Plaintiff who continues working for over one month after the last hostile act would face a tough hurdle in convincing a jury that "a reasonable person in her position would have felt that she was forced to quit because of intolerable and discriminatory working conditions." *Steiner*, 25 F.3d at 1465 (quoting *Thomas v. Douglas*, 877 F.2d 1428, 1439 (9th Cir. 1989)); *Ramirez v. Olympic Health Mgmt. Sys., Inc.*, 610 F. Supp. 2d 1266, 1279-80 (E.D. Wa.) (finding no constructive discharge when Plaintiff searched for a new job for two weeks following final harassing act before resigning); *Poland*, 494 F.3d at 1185 (finding no constructive discharge as a matter of law when Plaintiff worked an additional three months after deciding to retire following discriminatory act).

Absent any further allegations regarding that one-month delay, Plaintiff fails to allege a constructive discharge.[9] As Plaintiff fails to allege a constructive discharge, Plaintiff's claim of wrongful discharge is DISMISSED. Further, because Plaintiff's wrongful discharge claim arises from the same allegations supporting her Title VII and ORS 659A.030 and ORS 659A.199 claims, her wrongful discharge claim is precluded. *Lindsey v. Clatskanie People's Util. Dist.*, 140 F. Supp. 3d 1077, 1096 (D. Or. 2015) ("Title VII and ORS § 659A.030 provide adequate

---

[9] Additionally, as discussed above, Plaintiff just barely alleges sufficient facts supporting a hostile work environment claim. As a constructive discharge claim presents an even higher bar, the Court has significant doubts regarding Plaintiff's ability to clear that hurdle.

statutory remedies and preclude [Plaintiff's] common law wrongful discharge claim."); *Cilione v. TechFive, LLC*, No. 3:18-cv-02030-SI, 2019 WL 1246195 at *3-4 (D. Or. Mar. 18, 2019) (finding ORS 659A.199 claim preempts Oregon common law wrongful discharge claim). Plaintiff's wrongful discharge claim is therefore DISMISSED, with prejudice.

## III. Discrimination

Plaintiff's claims of discrimination under Title VII, 42 U.S.C. § 1981, and ORS 659.030 have the same legal standard of review. *DeWeese v. Cascade Gen. Shipyard*, No. 08-cv-860-JE, 2011 WL 3298421, at *7 (D. Or. May 2, 2011). To establish a *prima facie* claim of discrimination Plaintiff must establish that: 1) she belongs to a protected class; 2) she was qualified for the position; 3) she was subject to an adverse employment action; and 4) similarly situated individuals outside of her protected class were treated more favorably. *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008). For purposes of the motion to dismiss, National assumes that Plaintiff satisfies the first and second elements. Def.'s Reply 9, ECF No. 12. Defendant argues, however, that Plaintiff failed to allege sufficient facts to show: (1) that she suffered an adverse employment action; and (2) that she was treated less favorably as compared to similarly situated individuals outside her protected class. *Id.*

As demonstrated above, Plaintiff fails to allege a constructive discharge. And absent a constructive discharge, Plaintiff's discrimination claims fail because, with the exception of the alleged constructive discharge, she does not identify any adverse employment action sufficient to support a discrimination claim. In the discrimination context, an adverse action is one that "materially affect[s] the compensation, terms, conditions, or privileges of [employment]." *Chuang v. Univ. of California Davis, Bd. of Trustees*, 225 F.3d 1115, 1126 (9th Cir. 2000). The Supreme Court described such an action as a "tangible employment action." *Burlington Indus.,*

*Inc. v. Ellerth*, 118 S. Ct. 2257, 2268-69 (1998). Not every reassignment or even demotion

suffices. *Id.* Instead, "[a] tangible employment action constitutes a significant change in

employment status, such as hiring, firing, failing to promote, reassignment with significantly

different responsibilities, or a decision causing a significant change in benefits." *Id.* at 2268.

Here, Plaintiff alleges the conditions of her employment were altered by the nature and

frequency of the discriminatory and harassing behavior of Hargreaves and Kintz, which resulted

in her constructive discharge. Pl.'s Compl. ¶¶ 37, 41, 48, 54, 86. Specifically, Plaintiff argues:

> Defendant subjected Plaintiff to an adverse employment action when Plaintiff, a
> Hispanic and Spanish-speaking individual was prohibited from speaking Spanish,
> directed by the Human Resources Manager to make a list of Spanish-speaking
> employees who "did not speak good English," constructively discharged, and
> forced to endure a pattern of ongoing harassment as a term and condition of
> employment.

Pl.'s Resp. 9 (internal citations to complaint omitted).

Being prohibited from speaking Spanish or being forced to compile a list of Spanish-

speaking employees, however, does not qualify as a "tangible employment action" necessary to

support a discrimination claim. Instead, Plaintiff's response merely clarifies that she relies on her

alleged constructive discharge as the necessary adverse employment action. *See* Pl.'s Resp. 9

(arguing Plaintiff was subjected to an adverse employment action when she was "forced to

accept and endure a pattern of ongoing harassment as a term and condition of employment.");

*see also* Pl.'s Resp. 10 ("Here, the pleadings establish constructive discharge as an adverse

employment action."); *see also* Pl.'s Resp. 12 ("Plaintiff has alleged the discrimination she

endured resulted in her constructive discharge. That is an adverse employment action sufficient

to state a claim upon which relief can be granted for disparate-treatment discrimination.").

However, a claim of conduct that is so "severe or pervasive as to alter the conditions of the plaintiff's employment" is a "hostile work environment claim wrapped in a different nomenclature" and is considered as part of the hostile work environment discussion above. *Hess v. Multnomah Cty.*, 216 F. Supp. 2d 1140, 1155, (D. Or. 2001). Plaintiff's argument that *Hess* is somehow not analogous because it dealt with a motion for summary judgment is unconvincing. The legal analysis in *Hess* is apt here, as demonstrated by substituting the party names here with the party names in *Hess*:

> However, [Torres's] claim of forced resignation due to her intolerable working conditions that [National] failed to correct is nothing more than a claim of constructive discharge due to a hostile work environment. As discussed above, none of the individual incidents alleged by [Torres] prior to her resignation constitutes an adverse employment action by itself. Instead, it is the cumulation of incidents over a period of years that led [Torres] to conclude that she could no longer work under [Hargreaves]. That claim is simply a hostile work environment claim wrapped in different nomenclature. Although [Torres's] forced resignation is an adverse employment action, her discrimination claim for disparate treatment premised upon that forced resignation is necessarily subsumed into her hostile work environment claim.

*Id.*

Because Plaintiff fails to state an adverse employment action that can be separated from her hostile work environment claim, Plaintiff's claims of discrimination under Title VII, 42 U.S.C. § 1981, and ORS 659.030 are DISMISSED without prejudice.

## IV. Retaliation

National argues that Plaintiff has failed to state a claim for retaliation because she fails to provide facts that National was even aware of her involvement in protective activities and fails to clearly identify which actions were retaliatory. Def.'s Mot. 12–13, ECF No. 12.

To establish a *prima facie* claim for whistle blower retaliation under ORS 659A.199, an employee must establish: (1) her involvement in a protected activity; (2) an adverse employment

action; and (3) a causal link between the two. *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 969 (9th Cir. 2001). In contrast to the standard for discrimination claims noted above, an adverse employment action in the context of a retaliation claim is "any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity." *Ray v. Henderson*, 217 F.3d 1234, 1242-43 (9th Cir. 2000). In establishing a causal link between the protected activity and adverse employment action, an employee must prove the employer's "desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013). Absent direct evidence of retaliatory intent, causation may be inferred solely from timing when the "adverse employment action follows on the heels of protected activity." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002).

Here, Plaintiff's claims of retaliation fail because she does not provide facts that she suffered an adverse employment action. Plaintiff argues she engaged in two protected activities: reporting to her supervisor that National was presumably violating "state or federal law, rule, or regulation" by changing workers' timecards, and filing an OSHA complaint over National's response to COVID. Pl.'s Compl. ¶ 118.

Plaintiff, however, does not tie an adverse action to either of her protected activities. While Plaintiff alleges that Hargreaves treated Yarber poorly after Yarber took Plaintiff's timecard instruction concerns to Hargreaves and National's outside legal counsel, there is no indication that Hargreaves, or any other National employee, treated Plaintiff any differently as a result. *Id* at ¶ 16. Instead, Plaintiff specifically alleges that after Yarber complained, "Hargreaves became hostile and abusive towards Ms. Yarber." *Id.* And as Plaintiff does not state when Yarber raised this complaint, or when "Hargreaves became hostile and abusive towards Ms. Yarber," the

16 – OPINION AND ORDER

allegations do not allow the Court to infer Hargreaves retaliated against Yarber because she raised the complaint or, say, because Hargreaves generally discriminated against female employees as alleged throughout Plaintiff's complaint.

Additionally, Plaintiff was not deterred from engaging in protected activities, as illustrated by her April 17, 2020 OSHA complaint. *Id.* at ¶ 27. Plaintiff alleges that four days after she filed the OSHA complaint, Kintz asked her for assistance in making a list of "Spanish-speaking employees who 'did not speak good English' to ensure that only 'English speaking' workers spoke to OSHA investigators." *Id.* at ¶ 28. As with the timecard complaint, however, there is no allegation that Hargreaves or Kintz knew Plaintiff filed the complaint. Plaintiff merely alleges that on April 17, 2020, she and Yarber filed a whistle-blowing complaint with OSHA regarding National's unsafe working conditions during COVID. Pl's. Compl. ¶ 27. Although the timing of the alleged retaliatory act supports an inference of retaliation, this does not absolve Plaintiff of the obligation of pleading that Kintz knew Plaintiff filed the complaint.[10] After all, if Hargreaves and Kintz did not know Plaintiff filed the complaint, they could not retaliate against her for taking that protected activity.

As Plaintiff fails to plead a valid retaliation claim, that claim is DISMISSED, without prejudice.

## V. Aiding and Abetting

Defendants argue that Plaintiff's aiding and abetting claims (against Tieg, Hargreaves, and Kintz) fail because Plaintiff specifically alleges that each individual Defendant acted within the scope or their employment. Under Or. Rev. Stat. § 659A.030(1)(g), when a primary actor,

---

[10] Plaintiff does not allege that she informed Kintz that she filed a (presumptively confidential) whistle-blowing complaint with OSHA. Similarly, Plaintiff does not allege that the OSHA investigator informed Kintz that Plaintiff filed the complaint.

such as a supervisory employee, acts on behalf of an entity in the course of their employment, they are not aiding and abetting the entity. *Baker v. Maricle Indus., Inc.,* No. 6:16-CV-01793-AA, 2017 WL 1043282, at *4 (D. Or. Mar. 17, 2017).

Plaintiff specifically alleges that Tier (as National's President and owner), Hargreaves (as National's plant manager), and Kintz (as Plaintiff's direct supervisor, were "[acting at all times] in the course and scope of their agency and employment for National,". Pl.'s Compl. ¶¶ 7, 10-11, 15. Plaintiff does not imply anywhere in the complaint–and in fact admits the opposite in the paragraphs cited above–that the individual Defendants' actions were outside the course of their employment. Thus, it follows that those Defendants cannot be held liable for aiding and abetting National because their actions never went beyond their official duties. *McGanty* 321 Or. at 538–39 (finding that the plaintiff could not bring an aiding and abetting claim against a corporate president because he acted within his official capacity).

Because Defendants Tieg, Hargreaves, and Kintz were acting in the course and scope of their employment, Defendants' motion to dismiss Plaintiff's aiding and abetting claims is GRANTED. Plaintiff's aiding and abetting claims are DISMISSED with prejudice.[11]

## VI. Intentional Infliction of Emotional Distress ("IIED")

As with the aiding and abetting claims, the Court addresses Plaintiff's IIED claim against National, Tiegs, and Hargreaves together. Defendants argue, among other things, that none of the alleged actions transgress the bounds of socially tolerable conduct.

---

[11] The Court must comment on Plaintiff's allegations against Tieg, National's President and owner. Tieg apparently works out of Washington, not Oregon. *See* Pl.'s Compl. ⁋ 8 (alleging Tieg is a citizen of Washington). There are no allegations, at all, remotely tying Tieg to any of the alleged harassment at issue. There are no allegations that Tieg directed, ratified, or even was aware of any of the actions at issue here. The closest Plaintiff comes is with an allegation that Hargreaves stated he was waiting for Tiegs to provide guidance on the plant's COVID protocols. Pl.'s Compl. ⁋ 25. Even assuming, however, that Tiegs was negligent in establishing safety protocols at the beginning of the pandemic, any negligence is irrelevant to Plaintiff's claims that she was discriminated against and harassed on account of her gender and race.

Trial courts play a gatekeeper role in evaluating the viability of an IIED claim by assessing the allegedly tortious conduct to determine whether the conduct is an extraordinary transgression of the bounds of socially tolerable conduct. *House v. Hicks*, 218 Or. App. 348, 358 (2008). The conduct at issue must be extraordinary to "distinguish actionable conduct from the insults, ill temper, and offense jokes that persons are expected to endure under contemporary standards of behavior," and to assess an "objective reality for a claim of harm that otherwise rests only on evidence of the plaintiff's subjective reaction divorced from physiological or other tangible injury." *Brewer v. Erwin*, 287 Or. 435, 457 (1979) (abrogated on other grounds in *McGanty*, 321 Or. at 546-51). The conduct at issue must rise to the level of "outrageous in the extreme." *Shay*, 131 Or. App. at 273 (citing *Patton v. J.C. Penney Co.*, 301 Or. 117, 124, (1986)). Illustrative of this high bar, Oregon Courts have found that even felonious conduct does not necessarily rise to the level of an IIED claim. *Id.* In discussing the IIED threshold, Oregon courts quote comment d of §46 of the Restatement, which notes that "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *House*, 218 Or. App. at 358.

Plaintiff argues that the same sexual and race-based discriminatory and harassing behavior discussed under the hostile work environment analysis was also so "outrageous in the extreme" to meet the high bar of an IIED claim. The Court disagrees. As stated above, the Plaintiff's alleged facts, in the aggregate, ride the line of allegations that support a hostile work environment claim. While the Court has left the door open on Plaintiff's hostile work environment claim, the conduct alleged simply does not rise to the level of an extraordinary

transgression of the bounds of socially tolerable conduct. *McGanty*, 321 Or. at 543. Plaintiff's

IIED claim is therefore DISMISSED, with prejudice.

## VII. Doe Defendants

Plaintiff names "Does I through III" as defendants in this case. National moves to dismiss

these defendants because Plaintiff provides no allegations associating these unknown defendants

with any of her claims. The Court agrees. In the Ninth Circuit:

> As a general rule, the use of "John Doe" to identify a defendant is not favored. However,
> situations arise . . . where the identity of alleged defendants will not be known prior to the
> filing of a complaint. In such circumstances, the plaintiff should be given an opportunity
> through discovery to identify the unknown defendants, unless it is clear that discovery
> would not uncover the identities, or that the complaint would be dismissed on other
> grounds.

*Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) (internal citation omitted).

Here, Plaintiff does not make any claims, or even any allegations against any Doe

Defendants. The use of a "Doe" defendant pseudonym should not be used as a place holder in the

hope that additional defendants may be identified later for *unspecified* actions. If there are

specific allegations against an unknown person, which Plaintiff feels will be revealed during

discovery, Plaintiff should allege as much. The motion to dismiss the Doe Defendants is

GRANTED, without prejudice.

## CONCLUSION

As discussed above, Defendants' Motions to Dismiss (ECF No. 10-13) for Defendants

Tiegs, Hargreaves, and Kintz are GRANTED in full with prejudice, and motions by Defendant

National are GRANTED in part, and DENIED in part as follows:

Claims one, two, three, six, eleven, and twelve DISMISSED without prejudice.

Claims four, five, and seven dismissal DENIED.

20 – OPINION AND ORDER

Claim thirteen DISMISSED with prejudice.

"Doe" Defendants are DISMISSED without prejudice.

IT IS SO ORDERED.

DATED this 3rd day of May, 2021.

_____/s/ Michael J. McShane_____
Michael McShane
United States District Judge